Case number 20-5028, Niskanen Center Appellant versus Federal Energy Regulatory Commission. Ms. Gibson for the appellant, Mr. Pfaffenroth for the appellate. Good morning. Megan Gibson on behalf of the appellant Niskanen Center. May it please... Oh, counsel for appellant, I cannot hear you. I hear you faintly. Could you speak directly into the mic? Yes. Is that better, your honor? It is better. It's not great, but it's better. Thank you. Apologies. I'll go a little closer. I'll address two main issues. That's much better. Okay, excellent. I'll address two main issues under FOIA Exemption 6. First, the district Well, the district court in fairness said, for example... Yes, your honor. That is the only example, clear example that's been given by the district court and by FERC. FERC offered no example, substantive examples of any substantial, real, true risk or threat to privacy interests on the landowners on this list, including in the administrative proceeding as well as before the district court. So the example cited by the court is the only real example that we have. And there's no evidence of such a threat, either on the record or in the articles that were cited. Do you know of any case that would require such evidence? What case would you cite for the proposition that the commission has to come forth with such evidence? Sure, your honor. So it's baked into the Exemption 6 test. Under Exemption 6, FERC has to demonstrate that the threat to privacy is clearly unwarranted. That language is in the statute itself and in the case law. So in all of the cases that FERC cites to, all of those cases are an opposite. As in those decisions, the courts explicitly found, one, no public interest in disclosure. And two, that often was coupled with established threats to privacy interests. So, for example, the risk of commercial solicitation or there was evidence. Was there evidence in that case about that? Or did the court just assume that such exploitation would occur? Because in our recent cases, I looked at them pretty carefully, because you cite many of them in the brief. I didn't see any cases, and maybe I missed it, which is why I asked you the question, that require the kind of evidence you're suggesting. In fact, in Horner, which has a lot of discussion in this case, that in Horner, we, quote, assumed, we assumed, and that's a quote from the case, we, quote, assumed that the companies wouldn't overlook an opportunity to exploit it. So I don't see any cases that require such evidence. And in fact, as I read our cases, they don't seem to require that. And also, I think, you know, what the commission said in its brief here was just an elaboration of what it said in its decision. It's very different from Chiquita, where Chiquita, in Chiquita, it was almost, it was really brief. Here, you've got, you know, quite a few pages of discussion, especially in the denial of the appeal, explaining the problem here. So. So I'm happy to walk through some of the cases that FERC cited in Israel. Sure, please do. That would be helpful. Yeah, the distinguishing factor between this case and Horner is namely that there was no public interest at issue at all in Horner. So the balancing tests clearly weighed in favor of the privacy interest at stake. There also was financial information within the list that the lobbying group was requesting in that case. There is no financial information on this list. The only thing that would be out there if these lists were fully disclosed is the fact that a pipeline sought to take these folks' land to build their project. That's it. Did any of those cases discuss the situation with which this court is familiar? And certainly the public is familiar. That when these pipeline proposals become public, there is often negative reaction such that there are demonstrations. There are other contacts, unwanted contacts with property owners and the like. So I'm trying to understand whether in this type of situation where the court has acknowledged that sometimes it's obvious, what is the concern? Must the court require the agency to be expressed about it? I understand your point about you can distinguish each of these cases. But what I was interested in was, it's basically what I read the district court is saying. Yes, your honor. These are not his words, my words. Everybody knows. For example, trespass. Well, your honor, I agree that there is a collective understanding that there can be significant opposition, namely to oil pipelines, mainly near Native American land. And those are the two examples that were cited by FERC. But I, my office scoured the internet for hours looking for a single example of protesters trespassing on the land that is at issue here, namely land that is owned by individual property owners, not by a pipeline company, not by a corporation, not by the federal government. And we can counsel the point is I own land. And now this plan has come out that this pipeline wants to put some pipes on my land. And I, oh, goodness, what does that do to the value of my property? Much less the aesthetic pleasure I desire. I mean, I just don't understand what requirement you think the agency was required. What required the agency to make the type of specific finding that I think you're calling for? Yes, your honor. So, I mean, the agency was required to at least proffer some significant threat to privacy here. Any threat to privacy. And they offered no such threat. Why don't you, why don't you just refile your FOIA request? For? The same, make the same request, because the situation has totally changed. The pipeline is not going to be built. Only a fool would go protest on land where there's not going to be a pipeline. And or do demonstrations or anything else. And so if you just file again, the basis on which it was denied, it no longer exists. Well, your honor. Let me put it differently. Why shouldn't we take into account the fact that the pipeline is not going to be built? Isn't that really the strongest argument you have? I would argue that that's in favor of full disclosure because the risk of example is clearly no longer. I thought your argument. I would have thought your answer to judge Randolph was you're not interested in any particular pipeline. You're interested in showing that for in determining whether FERC's notice procedures are adequate, right? Isn't that that's what you're up to here, right? I don't mean excuse me. That's your interest. That's your public interest, right? Yes, your honor. Whether the pipeline's going to operate or not, your examination of how FERC handled this tells you something about the integrity of their notice procedures, correct? Precisely. And that would still be very relevant to the ongoing ACP restoration and require the pipeline to know. All right. So once again, getting these notice procedures completely wrong, which we suspect that it is, then the landowners still have no knowledge or that they need to intervene in these proceedings to assert their rights. Otherwise, they will waive all of those rights. So yeah, well, while I have the floor here, let me ask you a different question. Um, suppose, for example, just suppose hypothetically that I think that requiring FERC to reveal names and addresses is a substantial privacy interest. Just assume that that's what I think. So then we go to the balance, right? And we look at the public interest in balancing balance it against the privacy interest in names and addresses. Um, you agree, don't you, that when we look at that, we're looking at the at the difference between what FERC has offered and what you're seeking. In other words, it's the difference between initials and street names on the one hand and the difference on the one hand and on the other hand, full names and addresses, right? Yes, it's it's the incremental difference. Okay. So suppose, for example, that the publicly available records show that there are, um, there are six, this is a hypothetical, six affected properties on Mulberry Lane. Okay. And the landowner lists that they've given you shows only five. Doesn't that tell you everything you need to know that tells you that one person didn't get it. And like the district court, I'm a little mystified as to why you need anything more. Sure, your honor. Just, just stick with my hypothetical. Why, why, why wouldn't you know everything from the list you've got about Mulberry Street? Yes. Well, uh, your honor, your hypothetical assumes that there are only six landowners that live on Mulberry Street. So suppose there's a hundred. Yes. So let's say a hundred live on a very common street name in Virginia, Lee Avenue or Lee Highway, Lee Jackson Highway. Uh, there's numerous streets and avenues, highways in Virginia that are, that have the name Lee, uh, the. Did you make that argument to the district? The only argument I saw you make in the district court about the difference between names and initials is that, uh, there might be, uh, people wait, I want to be sure I have this accurate. Um, the only argument I think you made is that, um, uh, is that the property might've been sold to someone with the same initials. One of the arguments that we made, but I am confident I would have to double check the record that at oral argument, I noted the fact that there are streets and avenues, uh, that can go on for quite some time, such as, I think I gave the example of route 66, which is irrelevant here, but I think the district court could gather my meaning when I, when I cited to that example and you know, the track numbers of these properties are also incredibly important. Then did you ask for track numbers? Yes. Your honor. We asked for all of the information names, track numbers. You did ask for track numbers. Okay. We asked for full disclosure of the unredacted list, which includes track numbers. I have a couple of questions for you. Wait, excuse me. Just one thing. I just want to make, I'm sorry. I just want to be sure I get this. So the track numbers comes from the fact that the unredacted list includes track numbers. So does the, does the list you got include track numbers? It's redacted, your honor. All of the track numbers addresses cities. Okay. Thank you. Great. Okay. Thanks. How do you reconcile the line of cases in this circuit? And in fact, in the Supreme court with the idea that we should take into account why you want this information and what you're going to do with it with the line of cases that say that the requester, neither the requester or what that, why they requested once the documents or what they're going to do with it are totally irrelevant in a FOIA case. Thank you, your honor. Well, in ACLU versus us department of justice, the 2011 opinion from this court and that report found that, that the court should take into account derivative uses and evaluating the impact of disclosure on the public interest. There's no requirement that if you get this information, you can throw it in the trash can. And, and there'd be no consequence for you. There's no way to require you to use the information in the manner in which you're now suggesting as the reason for wanting it. Oh, your honor, the same argument could be made on the, the privacy interest side to quote justice Scalia and a concurring opinion in a ray derivative use of the public benefits side and derivative use of the personal privacy side must surely go together. And there is no plausible reason. He said to allow it for the one and bar it for the other. Yeah. How do you think the pipeline got the information with the track numbers and the landowners address and name? How did the pipeline get there? With a tremendous amount of resources, your honor. And I suspect land agents and contractors. It was public information. They got it. As a matter of fact, there's a regulation to that effect that requires them to go through the tax records, the state tax records. So it's public information, right? Now, which way does that cut? Does that mean that the privacy interest is really not very strong or maybe non-existent or that you don't need the information if you want to talk about need, because you can go to the public records, just like the pipeline did. So two points, your honor. One, your hypothetical assumes that the pipeline is getting these lists correct. And that's exactly why we are requesting these lists to ensure that FERC is fulfilling its constitutional and statutory duty to give each and every affected landowner along these pipeline routes notice, adequate due process notice of their rights. So you're going to contact each and every landowner. If you got this information, by looking at it, you would not be able to tell whether they've been properly given notice. Your honor, the public interest objective of obtaining these lists is to do a comparative analysis. And yes, we will utilize the public record available to do that comparative and chronological analysis to see the full extent to which, because we already know FERC is failing in sending each and every landowner notice, to see the extent to which FERC is failing in its duties. And the sample size that we have from the final environmental impact statement of 77 landowners who had their homes within 50 feet of this proposed project. And so there were construction drawings at each of their homes contained within the FEIS. 13 of those 77 homes, their physical addresses were deemed unavailable with engineering drawings of their homes. 17, excuse me, 13 out of 77. That's approximately 17%. If we say there's approximately 25. If the address is wrong, then you assume they didn't get notice. But don't you have to contact the landowners personally to find out whether they really got notice? No, your honor. If they don't have a correct address, then that's where they were sending notice. They never sent it. No, no. I think the point is if you had actual notice. Suppose your neighbor received notice. So that's not, that's not. And he said, you get this notice that the pipeline's coming through and you say, no, I didn't. They said, well, this pipeline is coming through. Look at this notice. So there were also town meetings, weren't there? Town meetings. Yeah. So you've got to contact the landowners. You expressly told the district court that you had no interest in contacting the landowners, right? Correct, your honor. And you haven't changed your mind about that, right? You're not interested in contact. You're just interested in doing a comparison, correct? You want to compare, you want to compare who they sent notices to, to the addresses to see if they send it to everybody, right? Correct, your honor. Okay. Correct. And I just note for the court's own knowledge, there is an additional public interest issue in this case in that there are ongoing proceedings and conversations occurring at FERC right now in the development of the office of public participation. And that office we're hoping will take over notice provisions. And we would like to help FERC, frankly, establish some accountability measures and having more data and understanding the full extent of FERC's failure will also inform that public interest. I just have one more or less technical question to ask you, Ms. Gibson. Um, you say that, uh, some of these initials that they've given you are not legit, right? Oh, correct, your honor. Yeah. But isn't that, isn't that something that the district court should just look at? I mean, we're not going to go through, I mean, they've got, uh, I mean, you've got, am I right? You got 800 pages. You don't expect us to go through those and decide. No, your honor. We'll just have the district, you have to take that to the district court, right? Yes, your honor. Okay. Thanks. All right. Thank you. Let us hear counsel for FERC, Mr. Paffenroth. I'm Pete Paffenroth for the Federal Energy Regulatory Commission. The focus of the discussion really, I think, needs to be on what additional incremental value of this very privacy-invasive disclosure of a ready-made mailing list, not just to the Niskanen Center, but to anyone, would really add for the public interest. The public already has sufficient information to know that FERC's agents, the pipeline, made substantial efforts to contact people. They may not have been completely perfect, but they were substantial. And whether or not any given individual got notice is not sufficient to incremental additional information to warrant overcoming their privacy interests. Privacy interests that the Supreme Court, for instance, in the Reporters Committee for the Freedom of the Press decision, said that, you know, it's one thing to have information in a government record. But when it's accumulated and readily possible to turn over information that's been in a computer, as opposed to something that you could perhaps laboriously go to a courthouse and gather, it's fundamentally different. And there are other decisions that have likewise talked about. Does the record in this case show that the notice procedures got to virtually everybody? You say there may have been a few people that were missed, but is that what the record shows? The only record evidence is what Niskanen has surmised from what it's already obtained. Its argument is that it doesn't know whether, it doesn't have enough information to determine whether a few people have been missed or a substantial number of people have been missed. That's their argument. I understand. You can't, FERC doesn't know the answer to that either, does it? FERC knows that pursuant to its regulation, the pipeline provided multiple lists, eight, I believe, over the course of a couple of years with very substantial efforts to provide notice. And, you know, they also provided public meetings. They also... I understand all that. But their bottom line is they want to know, in the end, was it effective? And that's the public interest, right? That's how we think about the public interest. The public interest that they've articulated is, is the commission adequately notifying property owners? And I don't see... I mean, you heard my question to Ms. Gibson about Walbury Street. I mean, like the district court, I'm a little mystified about how getting the name, full names, can tell them anything more than, anything significantly more than their initials. But I'm pushing back a little bit against your argument that I understood was that, you know, look, FERC did everything it could here. And if some people were missed, that's not significant. And I just don't know that we know that. Isn't that right? You're right. I'm not suggesting that it's not significant that a few people were missed. I don't mean to suggest that. I mean to suggest that Niskanen already has more than enough information to know that the notice efforts were not absolutely perfect. I got that. Yes. So what about the argument Ms. Gibson just made about landowners that FERC failed to contact would be marked as unavailable on the landowner list, and none of them are? So can you just explain this to me? Would the unredacted risks show up if a landowner was unavailable? Would it show that? I believe these are mailing lists, and there's either an address or there isn't. I would point the court's attention to the declaration that... Wait, no, wait, wait, hold on. I understood her argument saying that if you didn't know, if FERC didn't know, if it didn't have the address, it would have showed up as unavailable. Is that true? I'm asking because I truly don't understand this argument, but Ms. Gibson made a point of it in her brief and the argument about unavailable addresses. And maybe you could just explain that to me. What do you think that means? Your Honor, these are 800 pages of addresses, and I have not seen behind the redactions myself either. The reality is that Niskanen has said that there are several people who, or multiple people, a number of people who have not, for whom they can tell there is no address. I don't know if that is because, for instance, in their brief, they have a number of examples where the initials are basically the same for a number of people in roughly the same area. I could speculate that there may be a single owner who owns a whole bunch of land in that area, and there's not a house on that land, and the owner may have actually had a house that is properly part of the list. But I can't tell you that that's definitively true. I have not seen the unredacted list, nor do I think it's really properly presented in this case factually, that there needs to be an analysis in this appeal of that granular level of analysis. I understand that, but you've seen the unredacted list, right? I'm sorry, no. I've seen the redacted list. I have not seen the unredacted list. I was not involved in the redacted list. You're right. I have only seen what the court has seen. Well, does the redacted list... Wait, you've not seen the unredacted list? I have not. I am an assistant U.S. attorney. I represent FERC, and they handle their own FOIA processing. Okay. Well, do you know whether there's a category of people on the unredacted list who are, quote, unavailable? I do not know on the granular level of that. I know that the FERC regulation requires additional efforts by pipelines to make additional efforts. Is someone from FERC with you here? They're listening over YouTube. I could try and email them live if you'd like. Would you just email them and ask them if the unredacted list has a category of landowners that are, quote, unavailable? A category of what, Judge Tatel? Landowners that are... I hope I'm asking the question right. I just couldn't hear your question. Unavailable. Unavailable. What does unavailable mean? Well, I'm not sure, but Ms. Gibson said that people who they didn't have address scores are unavailable. I just want to know whether the unredacted list includes people who are unavailable. That's all. And while I've got you... He's writing the email. Oh, I'm sorry.  I've sent the email. I'll let you know if I get an immediate response. Thank you. Thank you very much. Of course. Of course. Little instant research here. Just one more question. You heard me ask Ms. Gibson about the illegible initials. I assume that if there are illegible FERC would fix those back. You would clarify that, right? Sure. Yeah, of course. I mean, the redaction in this process was done with, I guess, black boxes that were applied manually with an acrobat. It's a human being going through 800 plus pages and you can quibble with exactly where the black box starts and doesn't start. But if they gave you a list of... If they identified 50 initials that they couldn't read, you'd clarify that for me, right? Sure. Sure. Okay. Thank you. Sorry, Your Honor. No, go ahead. I did want to just add that the declaration that Niskanen offered from the landowner who said she was not properly contacted did indicate that the process didn't stop with these mailing lists, which are principally, I think, from 2015 and 2016. The landowner said that she may not have gotten... She didn't get these letters in the mail at that time, but she goes on to say, oh, and then on several occasions, a person showed up in person from the pipeline to try to talk to me about an easement. And so, again, this is... I understand that Niskanen's point is that folks should get the notice early on so that they can be involved early on in the regulatory proceeding. I understand that argument. But the point is also that before somebody actually is subject to a taking, yeah, they're not going to have some kind of legal proceeding where they literally don't know that their land is being taken. In the case of this woman who offered the declaration, she's at Joint Appendix 86 and 87, Pauline White. She specifically talks about how on a couple of occasions she got a phone call, and I believe she says also that the person showed up. I'm not reading it quickly enough to say that definitively, but that's my memory. So the point is that there are additional efforts, and as we point out at the end of our brief, the commission has been receptive to late intervention. We've been through that with FERC and its procedures, so let's not go down that route. Sure, I don't intend to. Let me just be clear here. The district court said if you have initials streets, isn't that enough? And on appeal, Kitchener's argument is that it needs a full name and address in order to determine whether the agency has fulfilled its obligation under the statute, which it has delegated to the pipeline to give notice, I'm going to say timely notice, to property owners. So what I'm trying to understand here is how you're reading FERC's obligation under FOIA. In other words, does it just turn over what it has to say, subject to invoking one of the exemptions, and then the burden is on the requesting party to point out what the deficiencies are, come back to FERC, and if FERC rejects their further arguments, then it comes into court. And when it comes into court, and we look at the statutory obligation of the agency to disclose, subject to these exemptions, what is our obligation? In other words, there have been cases in this court where this court has gone through boxes of documents to figure out what's but for the reasons Judge Tatel alluded to earlier, normally we would send that kind of inquiry back to the district court. But what is your understanding where the burden is here? That's what I'm trying to understand. The statute puts the burden on the agency. Then whoever doesn't get the information it wants can sue. I mean, I'm taking out a lot of the administrative steps. And then you get to court, and what happens? A few points, Your Honor. So first of all, I've seen a lot of FOIA litigation, and frankly, I think a lot of FOIA litigation could be avoided if both parties, the government and agents and requesters, were able to interact more effectively during the administrative process, because I think a lot of questions can be resolved without needing to burden the courts. It's a really interesting point. And I think this court has acknowledged that. And to me, that was somewhat what the district court was suggesting. Right. And again, FERC believes that its original response was actually the proper way of balancing in light of Supreme Court precedent and precedent of this court that has emphasized that when we are talking about mailing lists or lists of hundreds of in those government files, that agencies need to be very, very, very protective of those citizens' privacy rights. And so that's why FERC did what it did initially, which was to provide corporate landowners, but not to provide persons, because the Supreme Court's Exemption 6 jurisprudence talks about protecting persons' privacy. And the pushback is, well, that's just great, but I've lost my property. I am an individual landowner. I didn't have notice. I didn't timely seek administrative review. And then I couldn't get into court either. So it's all very well for agency to take that position. But I'm trying to understand where are we when we get to court? Well, in terms of whether or not somebody has the right to challenge the taking or to challenge the remuneration for the taking, the precedents that we cited at the tail end of our brief make very clear that so long as someone has the opportunity to question the amount that they're being paid, whether that's proper, that that is what the Supreme Court has said is sufficient. So, but I know this case is not about takings. The case is about whether or not FERC has provided the requisite notice acting through the pipeline applicants. No, because that's like step two. If you're at takings, you know. Right. Those are policy arguments that, you know, frankly, if NISC... No individual landowner isn't going to get 100% of value. At least that's what I understand here. What's happening? Because on one ground, you can say, look, NISC and center already has information that there were property owners who did not receive timely notice. All right. So they lost all these administrative opportunities. In terms of... Under FERC, they... What Congress have in mind, we want to know how agencies are functioning and they have to reveal enough. And so if the agency keeps invoking exemptions, so we can't understand what it's doing, that's not consistent with what Congress had in mind. And so the burden is on the agency to apply these exemptions with great care. And indeed, there's a fight as to whether it'll be interpreted narrowly, but the point is they are exceptions to the disclosure requirement. Your Honor, can I make a global point about FOIA litigation? Because this is something which, as somebody who's been practicing in this area for perhaps too many years, it pains me sometimes. Because in litigation, we understandably look at the parties who are before us, right? And we hear the arguments that are well advocated by those parties. Agencies are charged with protecting the public interest broadly, right? And I'm always afraid of the silent absentee parties. In this case, we're talking about literally thousands of citizens whose names could be turned over by pursuant to a request to anyone, right? And Niskanen Center disclaims wanting to do anything nefarious with these lists, but if they're turned over to Niskanen, they will be turned over to literally anyone who requests them next. And that could be somebody who realizes me, easy to figure out where the pipeline is supposed to go. And maybe I have a business in one of the affected counties, and I'm like, oh, I can plug some holes in my mailing list. Let's get the list that was given to Niskanen. There's literally, once this list goes out, there will be nothing that FERC can do to withhold the list from any other requester. When you said that you can figure out where the pipeline would go, I wondered about that. Does the pipeline publicly disclose the regulatory proceeding? In fact, last night, you know, in last minute preparation for this argument, I took one more look, and if you literally look on Wikipedia for Atlantic Coast Pipeline, there's a handy, or maybe it wasn't Wikipedia, it was some website. It's very easy. Your first list of results for a Google image search will show you with great detail. And you're talking about the privacy interests of the individuals. I just wondered, I asked the council for the petitioner here, all this information is readily available. If you have the route of the pipeline, you can get on your computer and get onto the state tax records and pull all the names and addresses up pretty easily, I think. And that's probably what the pipeline did. They didn't have people tramping around in the woods looking for evidence of who owned the property. They did it on the internet. So why is that information? So I think of privacy as seclusion. And I also think of privacy of keeping personal information secret. But this information is not secret. Your Honor, the agency is doing its best to abide by precedents of this court in the Supreme Court and in Horner, in Reporters Committee for Freedom of the Press, in Schrecker, which talks about the incremental value of the additional information, in Judicial Watch, which talks about withholding names and addresses of people. That's the decision of this court from 2006 of people who sort of were touched in any way the development of a drug related to abortion. There are many, many, many cases that say that- What does it tell you? Well, let me just back up. In Horner, Judge Ginsburg talked about, it's not just the name and address, it's because of a particular other defining characteristic. And so what is the defining characteristic of the people who own property on an abandoned plan for a pipeline? What is the defining characteristic there? That they're affluent enough to own land in the affected counties. It's not negligible that somebody who owns land, as opposed to somebody who's a renter or a transient living in that area, is affluent enough to own property. And that's something which would be potentially of interest to local companies that want to market in that area. Yeah. So all they do is get on the internet and check the tax records. But- Anything further that you'd like to share with the court? I just have one more question, if that's okay. Yes, that's fine. I was really intrigued with your point about FOIA litigation generally, and that everybody would be better served if there was more conversation between the FOIA requester and the agency. You do a lot of FOIA work, and we see a lot of FOIA cases. Why do you think that that doesn't occur? I think the... I'm not going to... Well, the statute has, unfortunately, aspirational but largely unattainable deadlines built into it. But nonetheless, there is a... There are a number of incentives for requesters to rush to court, as opposed to a really having the patience, which I believe a number of the statutory amendments to the FOIA have really been aimed towards encouraging, including... It's over a decade ago, they created the FOIA ombuds person at the National Archives. Every agency has to have a FOIA ombuds person. And Congress deliberately, I believe, created those resources in order to try and facilitate additional administrative ways to enable people to get the information they want. In this case, the record shows that Niskanen filed suit basically the moment that it believed that its administrative appeal was right. It was, in the agency's view, wrong because the agency had, in fact, exercised its right under the statute, although Niskanen hadn't gotten a word yet, because they filed it on day one, when they concluded they were eligible, to extend the response deadline to the administrative appeal by 10 days. In fact, FERC did respond within those 10 days. We have not had a response in this litigation, and so therefore the court needn't reach it about whether or not... Sorry. I just want to be sure I understand. So, and I realize we're going off a little bit, but I think your point was so interesting about FOIA cases. So, in this case, they went to court, Niskanen went to court, before they had any response from FERC at all? No. They had an initial response, and then they filed an administrative appeal. Okay. And you're allowed 20 days to respond to administrative appeal, but that's subject to a 10-day extension. Right. And they filed on either the 20th or the 21st day, I assume it was the 21st. And was there anything in FERC's responses that would have suggested to the plaintiffs that discussions might have been fruitful? Frankly, I think they'll tell you no, but I will tell you, based upon my experience seeing a lot of different FOIA cases, that there are reasons to, even where you get an unsuccessful response through the FOIA administrative process, to make additional efforts by reaching out, for instance, to the agency FOIA ombudsperson or to the NARA, I think it's called the Office of Government Information. But I mean, frankly, I know the woman who heads that up, or at least she used to head it up. I don't know if she's doing so. She's an amazing person and truly believes in facilitating access to government information as proper. And I think those are resources that are used far too little. Okay. Last question, I promise. And that is, and again, I'm asking you this as a lawyer who handles a lot of these cases, the district court and our court have mediation programs. Do you have any experience with our FOIA cases? Do FOIA cases ever get mediated in those programs? And if so, what's your sense of what's happening? I mean, here we have a case where the district court did the mediation in courtroom, right? That's true. What's your experience been with, do you have any with whether or not our mediation programs, either court have played a role in FOIA cases? Yes, I do. And I'm incredibly impressed by the efforts of the mediation program. Just within the last week, I've been engaged in extensive discussions with the mediation program about a different FOIA lawsuit. Well, let me interrupt and say, the court is not supposed to know what's going on. I'm simply, I'm not going to comment on the substance of those. I'm simply responding to Judge Tatel that yes, I think the mediation program is interested in these kinds of lawsuits and is making genuine efforts. What I'm trying to focus on here is jurisprudence. Congress passes a statute and years, Congress passes the FOIA statute. For years, the agencies resisted, all right, turning over materials. And then this court had a series of opinions saying, no, agencies had this obligation. And then the agency started to FOIA offices. And we've all been on cases where the agency has responded and the court has sent it back saying the agency needs to give a further response or something to that effect. But from the point of view of the requester, the statute does provide these incentives not to miss your filing deadline, either administratively or in court. So that is a district court is trying to fill in a vacuum as it were. So you have a requesting party here who is not, as I read the record, amenable to that type of negotiation. And it's looking at the statute and it's requiring that in its view, it's entitled to information and that the invocation of the exemption is improper. So that's the issue before this court, isn't it? Yes, Your Honor. I would quibble a little bit. Certainly there are statutory deadlines, but you have six years, if memory serves, to bring a FOIA lawsuit if there's no response. Well, I'm thinking that's a 20-day window, et cetera. In any event, there are other statutes of limitations that kick in. So I understand your point about a better way to do this. I understand why litigants come to court and sometimes the court will send it back. It didn't happen where the court decided it would try to negotiate this itself. That didn't work. So now they're before this court. And you take the position, as I understand it, that the agency properly invoked the exemption and that's the end of the matter as far as this appeal is concerned. That's right. The agency is trying... Frankly, Your Honor, if the agency wasn't trying to adhere to the multiple precedents from this court and the Supreme Court that have talked about the importance of safeguarding private citizens' information that's been assembled in government records through no act of the individual citizens, it would probably be easier for the agency to stop fighting and just hand over all the information. But the agency has an obligation to the public, not just to Niskanen Center that is the plaintiff in the suit to try and both follow the law as it understands it and to protect the public, which is ultimately Congress's fundamental purpose. And that's been recognized by multiple exemption six cases going back to the 1970s when it was a brand new exemption. So even were Niskanen not to prevail on appeal, it still has several avenues open to it, including petitioning the agency for a new rulemaking, challenging the application of the rule, et cetera. But we're getting far afield. So Judge Randolph, any questions? Thank you. Thank you, counsel. Thank you. All right. So counsel for appellant. Yes, thank you, Your Honor. And just to respond briefly to some of the points made by FERC's counsel, FERC is arguing here for essentially a categorical exclusion for lists of names and the disclosure of such lists as always and inherently being a significant threat to the privacy of individuals on this list. And I would also like to note for the court's own knowledge that other such FOIA requests have been made and other cases and FERC has never disclosed landowner lists without a lawsuit. Let's not get outside the record anymore that we already have. Yes, of course, Your Honor. The second point that I'd like to make and really hammer home is that the importance of this initial notice cannot be overstated. The Natural Gas Act provides the sole avenue of relief for landowners aggrieved by FERC orders. And under the... Counsel, I don't think that's a dispute here at all due respect. Well, wonderful, Your Honor. I just... Seriously. Yes, yeah, I think... Your own property, you want to be notified in time so that you have a chance to protect your property interest. Absolutely, Your Honor, but there was... So I thought the petitioner here was arguing, we want to be certain that property owners get the notice to which they are entitled. So you know already that not everybody received the notice you think they're entitled to. Yes, but I... Your position is no compromise in getting full name, full address. And to the extent that other avenues are available to you to get this information, not your problem. Isn't that your position before this court? No, Your Honor, if there was an avenue in which we could do the comparative or chronological... Well, you heard your responses to Judge Randolph were to the contrary. He pointed out several areas that are public now where you could get this information. But that wouldn't tell us what was on the Atlantic Coast Pipeline and by default, FERC... It would not tell you what? It would not tell us whether or not FERC sent notice to those individual landowners. No, but you would know who the property owner was. You could check the lists that have been filed by the pipeline with the agency, see if they were listed. If they're not, you have your information. Your Honor, I'm afraid I don't follow your solution because how would we... A number of these lists include PO boxes. They don't include track numbers. There are PO... That's what you're telling me. But in response to your questions to Judge Randolph, who was saying track numbers provide you additional information, that was not your response. You just rejected that as an avenue that you and any of your organization was in any way obligated to pursue. Your Honor, I don't see how we could fulfill the public interest in seeing whether or not agency is listing a majority, at the very least a majority of all... No, we've been down this road already. All right. And discussions with the district court as well. Did I hear another judge have a question? Yeah, I just wanted to ask Ms. Gibson about whether I understood her point about unavailable on the landowner list. Did I get that right or not? Yes, Your Honor. So there is actually a FERC regulation, section 157.6D4-5. And when mail, for example, is returned as undeliverable when sending out these notices, the ACP was required to submit that information, noting that those people were quote, unavailable. So those... I'm sorry, who required to be submitted? A FERC requires the pipeline to indicate whether or not on these lists, whether or not a landowner, their address is unavailable or mail was returned to them as undeliverable. And your point is that the unredacted list shows no unavailableness, correct? The current... I'm sorry, the redacted list, excuse me, shows no unavailableness, correct? Correct, Your Honor. There's no... And so you're suspicious, right? That there are, that there may be on the unredacted list, unavailable that you don't know about. And you think that that could suggest that Absolutely, Your Honor, correct. Judge Rogers, when Ms. Gibson is finished with her rebuttal, would you mind asking Council for FERC whether he got an email response to his email? Of course. Are we... Anything further, Judge Randall? No. All right. Thank you, Council. All right. Council for Apley, have you received a response to your email to FERC? I have, Your Honor. Would you care to share it to us or read it and then submit it as part of the record in this appeal? If you'd like, it's very short. I can simply tell it to you. I'm dying of curiosity. I'm dying of curiosity. I wanted to reach in the record for this case because Council for Apley was entitled to see what was said. And I have no problem if she wants to respond to what I'm about to say, because I know she's looked at the record extensively. So what does it say? It says if there are blanks and we see the blanks for some cases, Niskanen would be able to see that there is a blank because there wouldn't be a corresponding redaction. So for instance, in the case of an error, there may be no address provided and there's a blank because we don't know who the error is. So anyway, that's what I have. So OK, just explain that. I'm sorry. But OK, so I've now got the redacted list in front of me. Now, what's it going to tell me? I don't have the redacted list open currently during argument, but I can try. What I've been told, sorry, Your Honor, is that there are blanks and Niskanen should be able to those blanks in the list because there's nothing to redact if there's no corresponding address. All right. Thank you. Let the court take the case under advisement.
judges: Rogers, Tatel, Randolph